UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| THE ESTATE OF MEGAN MOORE, et. al, | : | |
| --- | --- | --- |
| | : | Civ. No. 18-16345 (RBK) (KMW) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| TABATHA ROMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiffs' Complaint, asserting violations of the Eighth and Fourteenth Amendments, under 42 U.S.C. § 1983, and related state law claims. Presently before the Court are Defendants CFG Health Systems, LLC ("CFG") and Nurse Amanda Caroccio's motions for summary judgment. Plaintiffs filed oppositions (ECF Nos. 11, 13-12), and Defendants filed replies (ECF Nos. 12, 13-13). For the reasons set forth below, the Court will grant the motion for summary judgment.

## I. BACKGROUND

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this case in a number of Opinions in *Estate of Megan Moore v. Cumberland County*, Case No. 17-2839 (hereinafter "*Moore I*"), the Court will only state those facts necessary to address the instant motion.

This case arises from Decedent, Megan Moore's pretrial detention at the Cumberland County Jail, and her death by suicide *via* hanging. In *Moore I*, Plaintiffs alleged that Moore's death was attributable to the actions of CFG's agents or employees, because they breached their duty to diligently and faithfully screen Megan Moore for any psychological risks, including her

risk of suicide. Plaintiffs also alleged that CFG and its employees acted with deliberate indifference that caused Ms. Moore's death. (Case No. 17-2839, ECF No. 1, at 5, 11).

Plaintiffs filed their complaint in *Moore I* on April 25, 2017, alleging that the county defendants violated, among other things, Decedent's constitutional rights, but only sued CFG for: wrongful death (Count V), a survival action (Count VI), and a negligence claim (Count VII). Plaintiffs did not name Nurse Caroccio in that complaint and did not include a claim for deliberate indifference against CFG or its employees.

Within the sixty days that followed, Plaintiffs did not submit an Affidavit of Merit ("AOM") establishing the existence of a valid claim, but on September 1, 2017, Plaintiffs did eventually submit an AOM.

On May 23, 2017, CFG filed an answer, asserting that Plaintiffs failed to file an appropriate AOM against CFG and its nurses. In its answer, CFG also identified Nurse Caroccio as a potential source of CFG's vicarious liability.

CFG filed a motion for summary judgment on the AOM issue on September 25, 2017. The Court granted summary judgment on May 7, 2018, finding that Plaintiff's AOM was deficient because it did not identify whose professional negligence it purported to review. Plaintiffs filed a motion for reconsideration, and the Court denied that motion.

On May 24, 2018, Plaintiffs filed a motion to amend the complaint, seeking to add new claims against CFG, and add Corrections Officer Roman and Nurse Caroccio as defendants. The Court denied that motion on September 18, 2018, because Plaintiffs failed to explain why they could not have added these claims prior to the motion to amend deadline. Additionally, because Plaintiffs waited until after summary judgment to file their motion to amend, their untimely motion appeared to be a deliberate attempt to circumvent the Court's dispositive rulings related to CFG.

2

On November 20, 2018, Plaintiffs filed the instant Complaint, but did not identify *Moore I* as a related case in the case information statement. Plaintiffs named Corrections Officer Roman, CFG, and Nurse Caroccio as Defendants in this matter. Plaintiffs raise: federal constitutional claims against CFG (Count I); federal constitutional claims against Officer Roman and Nurse Caroccio (Count II); state constitutional claims under the New Jersey Civil Rights Act ("NJCRA") against all Defendants (Count III); wrongful death claims against all Defendants (Count IV); survivorship claims against all Defendants (Count V); and negligence claims against Officer Roman and Nurse Caroccio (Count VI).

CFG and Nurse Caroccio (hereinafter "Defendants") filed their Answer on January 9, 2019, alleging the defenses of *res judicata* and collateral estoppel. Defendants then filed the instant motions, seeking dismissal of the claims against them under *res judicata* and collateral estoppel grounds, as well as seeking Rule 11 sanctions.

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

### III. DISCUSSION

As mentioned above, Defendants argue that *res judicata* and collateral estoppel warrant summary judgment in this matter. Defendants contend that Plaintiffs are attempting to relitigate "claims" against CFG and its privy, Nurse Caroccio, by filing a new Complaint with claims Plaintiffs "could have and should have brought in a timely manner in *Moore I*." (ECF No. 9-11, at 28).

Under our jurisprudence, *res judicata*, or claim preclusion, bars a subsequent suit where there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990). "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also *claims that could have been brought*." *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013). *Res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

Determining whether a subsequent suit involves the same claim does not depend on a party's specific legal theories, "but rather the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (internal quotation marks omitted). The fact that a party relies on different statutes and theories of recovery or seeks different relief in each action "does not [automatically] render its claims different causes of action for *res judicata* purposes." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984). Instead, a court focuses on whether a party: (1) complains of the same acts; (2) alleges the same material facts in each suit; and (3) requires the same witnesses and documentation to prove such allegations. *Elkadrawy*, 584 F.3d at 173.

Further, the fact that a plaintiff alleges "several new and discrete . . . [events] does not compel a different result." *Id.* at 174. When *res judicata* extinguishes a claim, it "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or *series of connected transactions*, out of which the action arose." *Id.* (emphasis in original) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

On the other hand, the doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating an issue if a Court had already decided that issue in a prior lawsuit. *See In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Collateral estoppel exists to promote judicial consistency, encourage reliance on court decisions, and protect defendants from having to relitigate the same issues in multiple lawsuits. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).

A party may invoke collateral estoppel when: (1) an adjudicative body decided the issue in a prior proceeding; (2) there was a final judgment on the merits; (3) the party(s) against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party

against whom the bar is asserted had a full and fair opportunity to litigate the issue in question. *Temple University v. White*, 941 F.2d 201, 212 (3d Cir. 1991), *cert. denied*, 502 U.S. 1032 (1992).

With those principles in mind, the Court observes that both parties acknowledge that *res judicata* and collateral estoppel have different elements, but have nevertheless chosen to argue them collectively, at times blending the two concepts. That said, the Court will first address the application of *res judicata*, since it appears that the parties' arguments focus on that doctrine.

As to the first prong, the parties agree that the Court's grant of summary judgment in favor of CFG in *Moore I*, is a final judgment for the purposes of *res judicata*. Likewise, as to the third prong, the parties agree that CFG is the same party in both cases.

On the other hand, the parties dispute whether Nurse Caroccio was in privity with her employer, CFG. At the outset, the Court rejects Plaintiff's arguments based solely on *Nat'l Cash Register Co. v. Remington Arms Co.*, 283 F. 196 (D. Del. 1922), that there is no privity between employers and employees as a general matter. The issue in *Remington* was privity of title and interest, in the context of assignors and assignees for a patent and estopping an assignor from "deny[ing] the validity of the patent he has sold." *Id.* at 198. *Remington* makes no mention of *res judicata*, collateral estoppel, or successive cases.

In contrast, the Third Circuit has held more broadly that a party may invoke "*res judicata* . . . against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991). In the present case, although Plaintiffs did not name Nurse Caroccio in *Moore I*, she and CFG had an employee and employer relationship.

6

This Court has held, on a number of occasions, that absent other considerations,[1] employees are in privity with their employers. *See Gordon v. E. Orange Veterans Hosp.*, No. 11-4066, 2013 WL 5730496, at *9 (D.N.J. Oct. 22, 2013); *Hussein v. Lolita Reality*, No. 11-03955, 2013 WL 5530256, at *4 (D.N.J. Oct. 3, 2013); *Druz v. Morgan Stanley, Inc.*, No. 10-6281, 2012 WL 762504, at *5 (D.N.J. Mar. 8, 2012). Moreover, in *Moore I*, Plaintiffs sought to hold CFG vicariously liable for the actions of its nurses, and CFG specifically identified Nurse Caroccio as a potentially liable employee in its Answer. Taken together, the Court finds that there was a sufficiently close relationship between Nurse Caroccio and CFG such that they are in privity for

---

[1] For example, the Third Circuit has observed that some courts "have declined to assume that privity exists between a municipality and its officers or other employees, . . . especially where" plaintiffs sue defendants "in both their personal and official capacities." *Huertas v. City of Philadelphia*, 188 Fed. Appx. 136, 137 (3d Cir. 2006). As a general matter, however:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:
>
> > (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
> >
> > (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

Restatement (Second) of Judgments § 51 (1982); *see also* 50 C.J.S. Judgments § 1147 ("Although the common interests implicit in an employment relationship ordinarily would tend to bring employers and employees in privity for purposes of *res judicata*, a court must examine whether each set of plaintiffs enjoyed the procedural protections to which they were entitled and if the purposes and effects of res judicata have been served.").

7

the purposes of *res judicata*. Further, because Plaintiffs, with due diligence, could have timely moved to add Nurse Caroccio as a defendant in *Moore I*, this is not a situation involving extenuating circumstances.

Returning then to the second prong, whether these cases involve the "same cause of action," the Court finds that the "same series of transactions underlie" *Moore I* and *Moore II*. *See Estate of Semprevivo v. Atl. Cty.*, No. 18-1953, 2019 WL 4187593, at *5 (D.N.J. Sept. 4, 2019). Both cases involve Decedent's incarceration and suicide at the Cumberland County Jail in February of 2017.

CFG was the healthcare provider for the inmates at the jail, and Nurse Caroccio was an employee of CFG involved in Decedent's care. In *Moore I*, Plaintiffs sought to hold CFG "liable for the actual physical acts of their employees, and their failure to provide adequate medical services." (ECF No. 11, at 9). In *Moore II*, Plaintiffs seek to hold CFG liable for its own policies, as well as the acts of its employees, for deliberate indifference to the Decedent's medical needs.

The facts concerning CFG's employees, their actions, and Decedent's care "are the same in both actions." *See Semprevivo*, 2019 WL 4187593, at *5 (arriving at the same conclusion, involving CFG and the same attorneys, in a different jail suicide case). Stated differently, the evidence concerning the physical actions of CFG's employees or lack thereof are the same in both cases, "[o]nly the legal theories are different." *Id*.

Plaintiffs summarily conclude that *Moore II* will require "different witnesses, documents and evidence" because *Moore I* "sounded completely in New Jersey Law and was based in negligence" rather than federal constitutional and related state law claims. The Court disagrees.

Effectively, whether the actions of CFG's employees amount to mere negligence or rise to deliberate indifference is a matter of degree and motive; the facts related to Decedent's care remain

the same. Both cases would involve nearly all the same material facts and require many of the same witnesses and documentation to prove such allegations. For example, in *Moore I*, to determine the parameters of CFG's duty of reasonable care and breach thereof,[2] Plaintiffs would presumably have to address CFG's policies on those subjects. (Case No. 17-2839, ECF No. 1, at 11). Whether CFG's employees negligently violated those policies in *Moore I*, or whether the policies themselves constitute deliberate indifference in *Moore II*, the policies would be relevant evidence in both cases.

Indeed, a close review of the Complaint in *Moore I*, shows that Plaintiffs alleged that CFG violated Decedent's rights "to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments" and that its "deliberate indifference . . . caused the death of Megan Moore." (Case No. 17-2839, ECF No. 1, at 11). Further, Plaintiffs alleged "that representatives of CFG demonstrated a deliberate indifference and conscious disregard for the psychological needs and overall safety of Megan Moore." (Case No. 17-2839, ECF No. 1, at 5).

In essence, *Moore II* merely elaborates on these allegations and attempts to cure Plaintiffs' failure in *Moore I*, *i.e.*, to add a claim for deliberate indifference against CFG and its employees.[3]

---

[2] Plaintiffs characterized that duty as one "to properly screen and vet inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, and to protect inmates from injury, harm or death while in custody at the Jail." (Case No. 17-2839, ECF No. 1, at 11).

[3] If Plaintiffs had proceeded *pro se* in *Moore I*, the Court might have construed the Complaint to allege a § 1983 claim for deliberate indifference against CFG. Plaintiffs, however, had retained counsel, and as such, the Court was "not required to liberally construe [the] complaint to make out potential claims." *Litwak v. Tomko*, No. 16-446, 2017 WL 4151178, at *5 (M.D. Pa. Sept. 19, 2017) ("Instead, it is the job of Plaintiff's counsel to clearly articulate a federal claim in the complaint."); *Collado v. B'Way Corp.*, No. 16-604, 2016 WL 1572541, at *4 (D.N.J. Apr. 19, 2016).

Taken together, the Court finds that *Moore I* and *Moore II* arise out of the "same transaction, or series of connected transactions," and are thus the same claim for the purposes of *res judicata*. *See Elkadrawy*, 584 F.3d at 173 (emphasis removed).

Finally, as discussed in *Moore I*, Plaintiffs, with due diligence, could have brought their § 1983 and related state law claims against CFG and Nurse Caroccio in *Moore I*. Accordingly, *res judicata* now bars Plaintiffs from litigating such claims, as well as the negligence claim against Nurse Caroccio, which "could have been brought" in the prior action. *See Marmon*, 726 F.3d at 394; *Semprevivo*, 2019 WL 4187593, at *5. Additionally, because the Court will grant Defendants' motion for summary judgment on *res judicata* grounds, the Court declines to address whether collateral estoppel also bars some of Plaintiffs' claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. An appropriate order follows.

Dated: September 27, 2019

                                                s/Robert B. Kugler_____
                                                ROBERT B. KUGLER
                                                United States District Judge