UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF MEGAN MOORE, et. al, | : |
| | : Civ. No. 18-16345 (RBK) (KMW) |
| Plaintiffs, | : |
| | : |
| v. | : **OPINION** |
| | : |
| TABATHA ROMAN, et al., | : |
| | : |
| Defendants. | : |

**ROBERT B. KUGLER, U.S.D.J.**

Before the Court is Defendant Tabatha Roman's motion for summary judgment. (ECF No. 40.) Plaintiffs filed an Opposition, (ECF Nos. 43, 44.), and Defendant Roman filed a Reply, (ECF No. 45.). Additionally, Defendant Roman suggests that the Court *sua sponte* issue sanctions under Rule 11. For the following reasons, the Court will grant Defendant Roman's motion for summary judgment and will decline to *sua sponte* issue sanctions. If Defendant Roman wishes to pursue sanctions in this matter, she may file a formal motion.

## I. BACKGROUND

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this case in a number of Opinions in *Estate of Megan Moore v. Cumberland County*, Case No. 17-2839 (hereinafter "*Moore I*"), and in its earlier Opinion in this case, "*Moore II*," (ECF No. 28.), the Court will only state those facts necessary to address the instant motion.

This case arises from Decedent, Megan Moore's pretrial detention at the Cumberland County Jail, and her death by suicide *via* hanging. In *Moore I*, Plaintiffs alleged that Ms. Moore's death was attributable to the actions of Cumberland County, CFG Health Systems, and their agents

or employees, because they breached their duty to screen Ms. Moore for her risk of suicide and failed to properly monitor Ms. Moore on the day of the suicide. Plaintiffs also alleged that Defendants acted with deliberate indifference that caused Ms. Moore's death. (*Moore I*, Case No. 17-2839, ECF No. 1, at 5, 11.)

In *Moore I*, although Plaintiffs pleaded claims against John Doe Corrections Officers 1-10, they did not identify Corrections Officer Tabatha Roman at that time. On May 24, 2018, Plaintiffs filed a motion to amend the complaint, seeking to add Officer Roman as a defendant. Magistrate Judge Williams denied that motion on September 18, 2018, because Plaintiffs failed to explain why they could not have named Officer Roman prior to the October 17, 2017, deadline to amend or add parties. (*Moore I*, Case No. 17-2839, ECF No. 72, at 5.)

Rather than seek reconsideration or file an appeal of that decision, on November 20, 2018, Plaintiffs filed the instant Complaint in *Moore II*, but did not identify *Moore I* as a related case in the case information statement. Plaintiffs named Officer Roman, CFG, and Nurse Caroccio as Defendants in this matter. (ECF No. 1.) In September of 2019, this Court granted CFG and Defendant Caroccio's motion for summary judgment, on *res judicata* grounds. (ECF Nos. 28, 29.) *Moore II* contains virtually identical claims as those against the John Doe Officers in *Moore I*, but identifies Defendant Roman as one of those officers. (ECF No. 1.)

Defendant Roman filed her Answer on February 19, 2019, pleading the affirmative defense of *res judicata*. (ECF No. 15.) In January of 2020, Defendant Roman filed the instant motion, seeking summary judgment under *res judicata* grounds and suggesting that the Court *sua sponte* issue Rule 11 sanctions.

## II.     STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton*, 572 U.S. at 657.  The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist).  The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson*, 477 U.S. at 257.  Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

## III.     DISCUSSION

As mentioned above, Defendant Roman argues that the Court should grant summary judgment on *res judicata* grounds.  In her view, Plaintiffs are attempting to circumvent Judge

3

Williams' denial of their motion to amend in *Moore I*. Defendant Roman contends that that denial of leave to amend is sufficient, for *res judicata* purposes, to bar the instant Complaint.

Under our jurisprudence, *res judicata*, or claim preclusion, bars a subsequent suit where there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990). "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also *claims that could have been brought*." *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (emphasis in original). *Res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

As to the second prong, determining whether a subsequent suit involves the same claim does not depend on a party's specific legal theories, "but rather the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (internal quotation marks omitted). The fact that a party relies on different statutes and theories of recovery or seeks different relief in each action "does not [automatically] render its claims different causes of action for *res judicata* purposes." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984). Instead, a court focuses on whether a party: (1) complains of the same acts; (2) alleges the same material facts in each suit; and (3) requires the same witnesses and documentation to prove such allegations. *Elkadrawy*, 584 F.3d at 173.

Further, the fact that a plaintiff alleges "several new and discrete . . . [events] does not compel a different result." *Id*. at 174. When *res judicata* extinguishes a claim, it "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the

transaction, or *series of connected transactions*, out of which the action arose." *Id.* (emphasis in original) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

### A. Same Claim

Due to the uncommon procedural history of this case, the Court will first address the second and third prongs of the *res judicata* analysis. As to the second prong, whether these cases involve the "same cause of action," the Court finds that the "same series of transactions underlie" *Moore I* and *Moore II. See Estate of Semprevivo v. Atl. Cty.*, No. 18-1953, 2019 WL 4187593, at *5 (D.N.J. Sept. 4, 2019). Both cases involve Ms. Moore's incarceration and suicide at the Cumberland County Jail in February of 2017.

In *Moore I*, Plaintiffs seek to hold John Doe Corrections Officers 1-10 liable for violating Ms. Moore's "rights under the Eighth and Fourteenth Amendments to be incarcerated in a safe and suitable environment, and to be safe from injury, harm, or death while in custody." (ECF No. 1, at 7.) Plaintiffs also filed negligence and New Jersey Civil Rights Act claims against the officers for failing "to properly screen decedent . . . for suicidal tendencies and/or psychological or emotional problems, . . . to adequately monitor and guard Megan Moore while she was incarcerated . . . and . . . to protect Megan Moore from injury, harm or death." (*Moore I*, Case No. 17-2839, ECF No. 1, at 10, 13–14.)

In *Moore II*, Plaintiffs' claims are virtually identical and merely substitute Defendant Roman as the true name of one of the officers involved. (ECF No. 1.) *Moore II* simply explains in more detail how Defendant Roman, as the officer on duty, "failed to adequately monitor and guard" Ms. Moore on the day of the suicide. (*Compare Moore I*, Case No. 17-2839, ECF No. 1., at 4, 10, 13–14, *with* ECF No. 1, at 7–8.)

Both cases would involve the same material facts and require the same witnesses and documentation to prove such allegations. Ultimately, Plaintiffs are pursuing the same claims against the same person in both cases, Defendant Roman as a John Doe Corrections Officer in *Moore I*, and Defendant Roman under her true name in *Moore II*.

Taken together, the Court finds that *Moore I* and *Moore II* arise out of the "same transaction, or series of connected transactions," and are thus the same claim for the purposes of *res judicata*. *See Elkadrawy*, 584 F.3d at 173 (emphasis removed).

In their Opposition, Plaintiffs emphasize that Defendant Roman's liability in *Moore II*, is "separate and independent" from the County and Warden in *Moore I*. (ECF No. 43, at 10.) Plaintiffs also stress that Defendant Roman's theory of liability under § 1983 in *Moore II*, "is completely different than" those against the County and Warden in *Moore I*, "whose liability is based on a *Monnell*[sic] claim. (*Id.*)

Plaintiffs' arguments miss the point,[1] and assume that Defendant Roman was not a party for the purposes of *res judicata* in *Moore I*. As discussed in the following section, Defendant Roman was one of the John Doe Corrections Officers in *Moore I*. Consequently, the issue is whether the claims against Defendant Roman in *Moore II*, are the same as those against her—as an identifiable John Doe Officer—in *Moore I*.

---

[1] That said, Plaintiffs' conclusory arguments also fail to address whether the complaints: (1) complain of the same acts; (2) allege the same material facts in each suit; and (3) require the same witnesses and documentation to prove such allegations. *Elkadrawy*, 584 F.3d at 173.

### B. Same Parties or Their Privies

Next, under the third prong, Plaintiffs do not appear[2] to contest that Defendant Roman is the same party in both cases. (ECF No. 43, at 9–12)  In *Moore I*, Plaintiffs sued a number of corrections officers using the fictitious names, John Doe Corrections Officers 1-10. (*Moore I*, Case No. 17-2839, ECF No. 1, at 1.)

In New Jersey, plaintiffs "may name a defendant using a fictitious name, *e.g.* John Doe; Jane Doe when the defendant's true name is unknown to them, provided there is an appropriate description sufficient for identification." *E.g.*, *Brookman v. Twp. of Hillside*, No. 09-2178, 2018 WL 4350278, at *3 (D.N.J. Sept. 12, 2018) (citing N.J. Ct. R. 4:26-4).  Additionally, "Plaintiff shall on motion, prior to judgment, amend the complaint to state [the] defendant's true name." *Sacchi v. Care One, LLC*, No. 14-698, 2015 WL 3966034, at *7 (D.N.J. June 30, 2015) (quoting N.J. Ct. R. 4:26-4).

With that in mind, the *Moore I* complaint makes numerous claims against John Doe Corrections Officers, one of whom corresponds with Defendant Roman.  *See Hammond v. Krak*, No. 17-00952, 2020 WL 1032296, at *4 (W.D. Pa. Mar. 3, 2020) (addressing a similar situation).

More specifically, in *Moore I*, Plaintiffs refer to a John Doe Officer who failed to supervise and monitor Ms. Moore on the day of the suicide. (*Moore I*, Case No. 17-2839, ECF No. 1, at 4, 10.)  On the other hand, *Moore II* simply explains that Defendant Roman was the John Doe Officer in *Moore I*, who failed to supervise and monitor Ms. Moore on the day of the suicide. (ECF No. 1, at 6–7.)

---

[2] It appears that Plaintiffs focused their efforts on the first and second prongs, whether both cases involve the same claim and whether there was a final judgment on the merits. (ECF No. 43, at 9–12)

In particular, *Moore II* clarifies that Defendant Roman, the officer on duty, needed to conduct suicide watch cell checks every thirty minutes. (*Id.*)  Defendant Roman failed to conduct those checks, which gave Ms. Moore "the time, opportunity, and means to commit suicide on February 20, 2017." (*Id.* at 8.)  *Moore II* further explains that Defendant Roman received a criminal indictment as a result of those failures. (*Id.* at 6.)

Therefore, when Plaintiffs identified Defendant Roman during discovery in *Moore I*, Plaintiffs "could have and should have moved to amend the complaint to state [her] true name," prior to the October 17, 2017, deadline. *Sacchi*, 2015 WL 3966034, at *7.  As Judge Williams held, "Plaintiffs have not refuted Defendants' assertion that Plaintiffs were in possession of the information forming the basis of their proposed amendments prior to the deadline to amend." (*Moore I*, Case No. 17-2839, ECF No. 72, at 8.)  Indeed, in their Opposition, Plaintiffs admit that they were aware of Defendant Roman's indictment, and discussed Defendant Roman at the September 18, 2017, status conference with Judge Williams, prior to the October 17, 2017, deadline. (ECF No. 44-1, at ¶ 22.)

Judge Williams further elaborated:

> Plaintiffs fail to demonstrate or even discuss how Ms. Roman's criminal matter impacted discovery in this case or their ability to add any of the proposed new defendants prior to the deadline to amend. Ms. Roman was indicted in September 2017, prior to the amendment deadline, and Plaintiffs were aware of Ms. Roman's criminal case at least sometime shortly thereafter. *See* Letter from Conrad J. Benedetto [Doc. No. 42], November 22, 2017 (discussing the September indictment). In addition, because  Plaintiffs have not asserted that they did not know of Ms. Roman's alleged involvement in this case prior to the October 17, 2017 deadline, they have failed to show good cause for failing to add her as a defendant before the deadline expired.

(*Id*. at 8–9.) Judge Williams also found that Plaintiffs failed to seek an extension of time to amend prior to the deadline, "even though they knew that they needed additional information to file an amended complaint." (*Id*. at 9.)

Consequently, because Defendant Roman was an identifiable John Doe Officer in *Moore I* and was the subject of a failed motion to amend, this Court finds that she is the same party in both cases for the purposes of *res judicata*. *See Hammond*, 2020 WL 1032296, at *4 ("The Greene County complaint includes references to John Does who appear to correspond to Defendant Vihlidal, and therefore *res judicata* also applies to this Defendant."); *Strahan v. Rowley*, No. 11-11235, 2011 WL 7646206, at *5 (D. Mass. Dec. 20, 2011) (applying *res judicata*, reasoning that "[a]lthough Rowley was not named in the complaint in *Strahan v. Stewart*, he can clearly be identified as a John Doe defendant. . . . Indeed, Strahan moved to amend his complaint in *Strahan v. Stewart*, albeit unsuccessfully, to add Rowley as a party."); *Goel v. Heller*, 667 F. Supp. 144, 151 (D.N.J. 1987) ("One cannot invoke 'John Doe' to avoid *res judicata* and relitigate claims *ad nauseum* when in large measure the acts and statements complained of and litigated in *Goel I* were those of Heller and Edgette. In a word, privity aside, Heller and Edgette were parties."); *cf. Sacchi*, 2015 WL 3966034, at *7 (concluding similarly in the duplicative litigation context).

### C. Final Judgment on the Merits

Returning then to the first prong, the Third Circuit has held, for *res judicata* purposes, that the "denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." *McKenna v. City of Philadelphia*, 304 F. App'x 89, 91–93 (3d Cir. 2008); *Prewitt v. Walgreens Co.*, No. 12-6967, 2013 WL 6284166, at *4 (E.D. Pa. Dec. 2, 2013); *Nat'l Pool Const., Inc. Liquidating Tr. v. Provident Bank*, No. 12-4641, 2013 WL 1222390, at *6 (D.N.J. Mar. 25, 2013).

Furthermore, "*res judicata* applies regardless of whether or not the denial of leave to amend . . . was based on the merits." *Prewitt*, 2013 WL 6284166, at *4; *Benckini v. Upper Saucon Twp.*, No. 07-3580, 2008 WL 2050825, at *5 (E.D. Pa. May 13, 2008) (citing *Northern Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2nd Cir. 2000) (explaining that such a holding is justified because "denying leave to amend is no more than a proxy to signify at what point claims have been *forfeited* due to a plaintiff's failure to pursue all claims against a particular defendant in one suit.") (emphasis added)).

In response, Plaintiffs contend that *Northern Assurance*, 201 F.3d 84, a Second Circuit case, is analogous to the present case, and shows that *res judicata* does not apply. In *Northern Assurance*, the denial of leave to amend in the earlier suit did not serve as *res judicata* because Northern sought "to add claims against a new defendant" and "Northern was not required to bring its claims" against that new defendant in the earlier suit. *Id*. at 88. Like *Northern Assurance*, Plaintiffs contend that they attempted to add Defendant Roman as a new defendant in *Moore I*, and that they were "under no obligation" to bring their claims against Defendant Roman in *Moore I*. (ECF No. 44, at 11–12.)

This Court ordered and received supplemental briefing on this issue. (ECF Nos. 53, 54, 55.) After considering the parties' submissions and upon further review of the procedural history in this case, the Court finds, as discussed above, that Defendant Roman was a party to *Moore I*, as a John Doe Corrections Officer, for the purposes of *res judicata*.

Rather than add a "new defendant," Plaintiffs' motion to amend in *Moore I* sought to substitute the true name of a John Doe Officer, *i.e.*, someone that was already in some way, a party in *Moore I*. Accordingly, the present case is distinguishable from *Northern Assurance*, in which the plaintiff sought to add an entirely new defendant. *Northern*, 201 F.3d at 88. There is no

10

indication in the procedural history of *Northern Assurance*, that the plaintiff in that case had ever used fictitious party pleading and had an obligation under those rules to substitute the true name of the fictious party. *N. Assur. Co. of Am. v. Square D Co.*, No. 98-1026, 1998 WL 938943, at *3 (N.D.N.Y. Dec. 29, 1998), *rev'd and vacated*, 201 F.3d 84 (2d Cir. 2000).

In contrast, in *Moore I*, the complaint had already set forth claims against Defendant Roman, as one of the John Doe Corrections Officers. Under the fictitious party pleading rules and the Court's scheduling order, Plaintiffs were required to move to amend the complaint and substitute her true name in order to pursue those claims against her. When Plaintiffs failed to do so in a timely manner, the denial of leave to amend signifies that they forfeited their right to pursue those claims against the John Doe that corresponds with Defendant Roman. *See Prewitt*, 2013 WL 6284166, at *4 (citing *Benckini*, 2008 WL 2050825, at *5).

As Defendant Roman was effectively the same party in both cases, this Court finds that the general principle in *McKenna* applies in this case, and that the denial of the motion to amend in *Moore I*, "is a final judgment on the merits barring the same complaint in a later action." *McKenna*, 304 F. App'x at 93.

In their Opposition, Plaintiffs emphasize that Judge Williams' denial of leave to amend was not on the merits, but rather, based on Plaintiffs' failure to address Rule 16 and Plaintiffs' failure to show good cause for their late motion to amend. (ECF No. 43, at 11.)

*Res judicata* applies, however, "regardless of whether or not the denial of leave to amend . . . was based on the merits." *Prewitt*, 2013 WL 6284166, at *4 (citing *Benckini*, 2008 WL 2050825, at *5). This is true because denials of leave to amend "signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit." *Northern*, 201 F.3d at 88; *Prewitt*, 2013 WL 6284166, at *4.

11

Accordingly, this Court concludes that the denial of leave to amend to substitute Defendant Roman's true name in *Moore I*, constitutes a final judgment for the purposes of *res judicata*. As Defendant Roman has established all three prongs, *res judicata* now bars Plaintiffs from litigating their claims against Defendant Roman in *Moore II*, which "could have been brought" in the prior action. *See Marmon*, 726 F.3d at 394; *Semprevivo*, 2019 WL 4187593, at *5.

Once again, Plaintiffs could have, and should have, moved to substitute Defendant Roman's true name in *Moore I*, prior to the deadline to amend, or requested additional extensions of time to amend. If Plaintiffs disagreed with Judge Williams' decision, they should have filed a motion for reconsideration or filed an appeal in *Moore I*. It is unfortunate that Plaintiffs must once again bear a heavy price for their counsel's shortcomings.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant Roman's motion for summary judgment. The Court, however, will not *sua sponte* issue Rule 11 sanctions against the Plaintiffs. (ECF No. 40-1, at 18.) If Defendant Roman wishes to pursue sanctions, she may file a formal motion. An appropriate Order follows.

Dated: July 24, 2021

                                                              s/Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge